# CHARLESTON.

### HOLSBERRY *et al. v.* POLING *et al.*

Submitted June 13, 1893—Decided November 11, 1893.

1. SURETIES—CONTRIBUTION—SALE—SEPARATE ESTATE—PARTIES —PLEADING.

Where a suit in equity is brought by one or more sureties against their cosureties to compel contribution, and a tract of land is sought to be sold as the property of one of said cosureties,

which is claimed by the wife of said cosurety as having been purchased and paid for by her, although the title remains in her vendor, it is error to decree a sale of said tract of land so claimed by said wife without making said vendor a party to the suit.

2. SURETIES—CONTRIBUTION—SALE—SEPARATE ESTATE—PARTIES —PLEADING.

In a suit of this character, when the bill alleges the insolvency of a cosurety, who is dead, and such allegation is not denied but admitted, the heirs at law of such dead cosurety are not necessary parties to the suit.

3. SURETIES—CONTRIBUTION—SALE—SEPARATE ESTATE—PARTIES —PLEADING.

Where mention of the land sought to be subjected as the property of said cosurety as fraudulently conveyed to his wife gives no description or clue of identity, except the naming of the county in which it lies, and there is nothing in the proceedings that renders it more certain, it is too indefinite to authorize any legal proceeding to subject the same.

J. Hop. Woods, for appellants cited 25 W. Va. 225; 11 W. Va. 122, p't 5 Syll.; 35 W. Va. 155, p't 3 Syll.; Code, c. 35, s. 39; Code, c. 139, s. 8; 18 W. Va. 75; 34 W. Va. 503; Wells Sep. Prop. M. W. § 113; 20 W. Va. 562; 23 W. Va. 664; 33 W. Va. 653; 2 Munf. 129.

W. T. Ice and M. Peck, for appellees cited 25 W. Va. 242; 35 W. Va. 155; 15 W. Va. 804; 27 W. Va. 229; 4 W. Va. 186.

ENGLISH, PRESIDENT:

One Jacob Hudkins in the mouth of October, 1876, was elected sheriff of Barbour county, W. Va., for the term of four years commencing on the 1st day of January, 1877, and on the 8th of December, 1876, he executed two bonds as such sheriff, one in the penalty of twenty thousand dollars and the other in the penalty of forty thousand dollars, with William Holsberry, Daniel Felton, J. W. Robinson, A. T. Crim, P. F. Poling, W. K. S. Stalnaker, Elam T. Poling, Andrew Valentine and others as his sureties.

Some time during the year 1877 some of said sureties became dissatisfied and declined to act further as such; and the County Court of said county required said Hudkins to execute new bonds, which he did on the 3d day of

December, 1877, in like penalties with said first-named bonds with William Holsberry, J. W. Robinson, Daniel Felton, A. T. Crim, P. F. Poling, W. K. S. Stalnaker, Elam T. Poling, Elliott Stalnaker and Andrew Valentine as his sureties. The said sheriff defaulted and became insolvent and left the State owing large sums of money to the state of West Virginia, the county of Barbour and to various persons, for which his said sureties were made liable.

In January, 1882, the state of West Virginia brought suit upon the official bond of said Jacob Hudkins against him and his sureties, and process was issued therein and executed on the said Hudkins and his said sureties in January, 1882; and on the 28th day of April, 1885, a judgment was rendered against A. Valentine, A. T. Crim, P. F. Poling, W. Holsberry, W. K. S. Stalnaker, D. Felton and J. W. Robinson for the sum of two thousand four hundred and fifty dollars and fifty cents, with interest thereon at the rate of twelve *per cent.*, and costs, which judgment was docketed in the judgment-lien docket in the clerk's office of the County Court of Barbour county.

On the 13th day of March, 1882, a judgment was recovered in the name of the state of West Virginia, for the use of L. C. Elliott, against said Hudkins and his sureties upon his said bonds, for the sum of three hundred and seventy seven dollars and thirty cents and costs.

On the 14th day of July, 1888, the state of West Virginia, for the use of Barbour county, recovered a judgment against said sureties upon said bonds for the sum of six hundred and eighteen dollars and twenty one cents and costs; and on the 22d day of October, 1888, James E. Heatherly, sheriff of Barbour county, recovered judgment upon said official bonds against said sureties for the sum of six hundred and eight dollars and seventy five cents and costs.

Andrew Valentine died leaving his widow, Rachel Valentine, and the following named infant children surviving him to wit: Sarah Valentine, Carry Belle Valentine, and E. Valentine.

Said William Holsberry, Daniel Felton, A. T. Crim and

Jacob Robinson having paid off the greater part of said judgments filed their bill at June rules, 1889, in the Circuit Court of Barbour county against Perry F. Poling, and Elizabeth Poling his wife, Leonard C. Bowman, William K. S. Stalnaker and Martha Stalnaker, his wife, Elam T. Poling. Elliott Stalnaker, Jacob Hudkins, William H. H. Shaffer, William B. Poling, Shelton L. Reger special commissioner, Warwick Hutton, administrator of Andrew Valentine, deceased, A. J. Valentine, Sarah E. Valentine, Carry Belle Valentine and Rachel Valentine, claiming and alleging that they were entitled to be substituted to the benefit of the liens and judgment so paid by them, and to have contribution from their said co-securities on the official bonds aforesaid, to the extent of their *pro rata* share of said liabilities as such co-securities.

Said bill among other things alleged, that the said Andrew Valentine then deceased was the owner of valuable lands in Barbour county at the time he became surety upon said bonds, and even up to the time of said Hudkins's default; that he sold said lands and with the proceeds purchased two valuable tracts of land in Randolph county, W. Va., which he procurred to be deeded to his wife, the defendant Rachel Valentine, who was then the owner thereof; that said shuffling of property from the name of the said Andrew Valentine into the hands and name of his wife, the said Rachel Valentine, was done to hinder, delay and defraud the plaintiffs from obtaining contribution from him, and that the said lands were liable in the hands of Rachel Valentine for his the said Andrew's proportion of the debts aforesaid.

The plaintiffs were thus seeking to follow the proceeds of the lands alleged to have been sold in the county of Barbour by the said Andrew Valentine, and subject said lands in the county of Randolph, which they alleged had been purchased with said proceeds, to sale, to obtain contribution for the amounts they had paid as his co-sureties. In order that this might be done, the infant children of said Andrew Valentine were regarded as necessary parties, and made parties by the bill. The plaintiffs by their bill were demanding the sale of real estate, which, they al-

leged, was purchased with the money of their deceased father.

It is true the defendant, Rachel Valentine, files her answer to this portion of the bill, denying in positive terms the allegations of the bill; and while she admits, that her deceased husband owned real estate in Barbour county after he became one of the sureties of said Hudkins, which was sold, and the proceeds invested in land in Randolph county, yet she alleges that said land was sold under a deed of trust to pay debts of her husband, and that none of it was ever deeded to her or owned by her at any time, but claims that she owned some land in Randolph county, which was purchased with her own money; and she further alleges that her husband died intestate and insolvent. This answer was replied to generally.

There is no proof of the insolvency of said Andrew Valentine, and there is no proof that the lands in the county of Randolph held by said Rachel Valentine were purchased with her own money, as alleged in her answer. In this case the administrator of the estate of Andrew Valentine was before the court, and the infant heirs at law were also made parties defendant, but the administrator failed to answer the bill, and the infant defendants were not represented by a guardian *ad litem*.

Said bill further alleged, that the defendant, Perry F. Poling, after the execution of summons upon him in the action upon said bonds, to wit: on the 2d day of March, 1882, sold his farm of two hundred acres of valuable land to the defendant Leonard C. Bowman for the sum of two thousand dollars, and that said land was sold with intent to hinder, delay and defraud the creditors of said Perry F. Poling, and especially to hinder, delay and defraud the State of West Virginia, and all who might ever have the right to sue upon said official bonds of the said Hudkins, sheriff as aforesaid, and that he did so for the purpose of hindering, delaying and defrauding plaintiffs from recovering from said Perry F. Poling his just and equitable part of said indebtedness aforesaid.

Answers were filed by L. C. Bowman, Perry F. Poling and Elizabeth Poling putting in issue the allegations of the

bill with reference to the fraudulent conveyance of the lands of said Poling to said Bowman.

Numerous depositions were taken in the case, and on the 20th day of February, 1891, a decree was rendered in the cause directing a commissioner therein named to ascertain and report the aggregate amounts, to which the plaintiffs were entitled by way of contribution from the defendant Perry F. Poling, as one of the sureties of Jacob Hudkins on his official bond as such sheriff, what payments had been made by plaintiffs, or what liabilities had been incurred by them or either of them as sureties on said bonds, for which they were entitled to contribution from said Perry F. Poling, *etc.;* but required no report from said commissioner as to the alleged fraudulent conveyance made by Andrew Valentine, nor as to the amount he or his estate was liable to contribute towards the payment of said judgments, or to reimburse the plaintiffs for the amounts paid thereon by them.

In compliance with the requirements of this decree a report was made by a commissioner, ascertaining the amount said Perry F. Poling was liable for, leaving out of consideration any liability on the part of said Andrew Valentine and finding that the tract of one hundred and fifty three acres described as containing two hundred acres, which was conveyed by said Poling and wife to L. C. Bowman, was liable to the satisfaction of one fifth of said judgment-debts. This report was excepted to by the defendant Poling and wife and L. C. Bowman because no examination or finding was made touching the real estate of Andrew Valentine, deceased, or of the defendant William K. S. Stalnaker, as charged in the plaintiffs' bill, as to its liability and contribution to the debts found by the commissioner to be due to the plaintiffs from the defendant Poling, and because the allegations of plaintiffs' bill were taken for confessed as to the liability of said Valentine and Stalnaker for contribution, yet the report found and fixed the whole liability upon the defendant Perry F. Poling, without settling the rights and equities of the plaintiffs against said real estate of said Valentine and Stalnaker.

These exceptions were overruled, said commissioner's

report was confirmed, and a sale of the land conveyed by Poling and wife to L. C. Bowman was directed to be made by commissioners therein appointed to satisfy the liability of said P. F. Poling, thus ascertained; and from this decree the defendants, P. F. Poling and wife and L. C. Bowman, obtained this appeal.

It is assigned as error by the appellants, that the court entered a decree of sale of the land sold by said Poling to Bowman before an inquiry had been made into the alleged liability of said Andrew Valentine and W. K. S. Stalnaker and the alleged fraudulent transactions on their part. It is, however, distinctly alleged in the bill that said Andrew Valentine and W. K. S. Stalnaker were insolvent, and the allegations of the bill with reference to the fraudulent sales and purchases made by said Valentine in the name of his wife neither designate the kind of land sold by him, its amount or locality, except that it was situated in Barbour county. Neither does it describe in any manner the land purchased by him in the name of his wife in Randolph county, and the same is true with reference to the allegations of the bill in reference to the sales alleged to have been made by said Stalnaker, only, in making said allegations, it does not state in what county the lands sold by him were located. It simply alleges that he was the owner of valuable real estate at the time he became surety upon said bonds, and that at the default of said Hudkins he suffered a chancery suit to be brought against him for certain pretended debts, in which suit his lands were sold, and his wife became the purchaser, and divided the same into small farms, and sold them out at a large profit, and that he and his wife have left the state, and are insolvent.

These allegations are not regarded as sufficient either as to said Valentine or Stalnaker to authorize the court to take any definite action. It is impossible to tell what lands were sold by Valentine, or what lands he purchased with the proceeds; and, as to said Stalnaker, looking to the allegations of the bill we can not know what lands he owned, by whom they were subjected, or where they were located, and the court could take no definite action under said allegation. It was, however, alleged and not denied, that both

of these parties were insolvent, and in the case of *Bruce* v. *Bickerton*, 18 W. Va. 343 (third point of syllabus) it was held that, "in a suit in equity for contribution, it is not necessary to make parties to the suit the personal representatives of insolvent deceased co-sureties, for whom the plaintiff has been compelled to pay money as co-surety." See also *Montague's Ex'r* v. *Turpin's Adm'x*, 8 Gratt. 453, where it was held that "where two or three obligors in a bond are dead, or insolvent, and there is no personal representative of either of them, the obligee, coming into equity to enforce the payment of the debt against the personal representative of the other obligor, is not bound to have personal representatives of the deceased insolvent obligors appointed and make them parties."

Barton, in his Chancery Practice (vol. 1, p. 217) lays down the rule thus: "Where one surety sued another for contribution, it was held that the executor of a third surety, who was dead, ought to be a party, although he died insolvent; but the general rule is that if, in such cases, the principal is clearly insolvent, and the fact of insolvency is proved, he need not be a party;" citing 1 Daniel, Ch'y Pr. 270, 271, where the author says: "And it seems from this circumstance, and also from the case of *Lawson* v. *Wright*, 1 Cox 275, that if the principal is clearly insolvent, and can be proved to be so (as by his taking advantage of an act for the relief of insolvent debtors) he need not be a party to the suit." See, also, Story, Eq. Pl. § 169, and authorities there cited. And, as we have seen, in a suit for contribution by one or more of the sureties of a joint and several bond against his co-sureties the representative of a deceased insolvent co-surety is not a necessary party.

The sale of said fourteen-acre tract mentioned and described in the bill as having been purchased from Adam Harsh, the title of which yet remains in said Adam Harsh, from whom it was purchased without first bringing said Adam Harsh before the court as a party to the suit, is also assigned as error; and, although counsel for appellees in their brief seem disposed to pass it over as a harmless error, we must regard it differently.

The general principle is that the party holding the legal

title must be brought before the court, before a sale can be made under its decree, and the title passed to a purchaser. It has so been held where the legal title is outstanding in a trustee. See the cases *Bilmyer* v. *Sherman*, 23 W. Va. 657 (fifth point syllabus). In the case of *Renick* v. *Ludington*, 20 W. Va. 562, Judge GREEN, in delivering the opinion of the court, quotes from Story's Equity Pleading (section 72) as follows (in speaking of necessary parties):

"One of these is a principle admitted in all courts upon questions affecting the suitor's person and liberty, as well as property, namely, that the rights of no man shall be finally decided in a court of justice unless he himself was present, or at least unless he has had a full opportunity to appear and vindicate his rights. Another is that, when a decision is made upon any particular subject, the rights of all persons whose interests are immediately connected with that decision, and affected by it, shall be provided for, as far as they reasonably may."

Adam Harsh, for some reason, has seen proper to retain the title to said fourteen-acre tract of land; and he has not been afforded an opportunity in this suit of saying why he does so. When parties purchase and pay for land, it is not usual for the purchaser to allow the legal title to remain in the vendor, and, if we are left to conjecture, we must say he has some good reason for so doing; but, be that as it may, he holds the legal title to the tract of land. It was error to decree the sale of it, without bringing him before the court. See, also, *Smith* v. *Parsons*, 33 W. Va. 653 (11 S. E. Rep. 68).

The appellant Bowman alleges that it was error to sell his land and at the same time sell for the same debt the fourteen acres claimed by plaintiffs to have been bought with money paid by him to Perry F. Poling in the purchase of the two hundred acres and the eight and a half acres.

As to this assignment of error, there is no allegation in the bill that said fourteen acres of land were purchased by Elizabeth Poling with money derived from her husband or from said Bowman as part of the purchase-money for said two hundred and eight and a half-acre tracts of land. The

deposition of Elizabeth Poling shows that she paid the purchase-money for said fourteen acres in stock; that she raised grain on her brother-in-law's land, and traded it for stock, which she had paid on the land; so that, so far as the allegations and proofs go, there is no foundation for said exception.

As we are of opinion that there was error in decreeing the sale of said fourteen acres of land in the absence of Adam Harsh, we deem it unnecessary, at present, to discuss the testimony as to the manner in which said fourteen acres of land were paid for, and by whom, as there will, no doubt, be additional testimony, when the cause is remanded, and the proper parties are brought before the court. I will, however, say that, if it is then made to appear that said fourteen-acre tract and forty four-acre tract were purchased by said Elizabeth Poling with money obtained from her husband, derived either from the sale of said two hundred and eight and a half acres or otherwise, said fourteen-acre tract and forty four-acre tract should be sold, as the property of Perry F. Poling, before said two hundred and eight and a half-acre tract is subject to sale.

As to the error assigned in finding the sum of six hundred and thirty nine dollars with interest since March 2, 1882, the commissioner's report was made for the purpose of assisting the court in ascertaining the liabilities of the defendants, and the court had the right to take the information thus derived and modify the report so as to reach the result sought to be ascertained; but, as the report will have to be recommitted, it will be of no benefit to discuss it, as it now stands.

As to the error based upon the fact, that no guardian *ad litem* was appointed for the infant children of Andrew Valentine, deceased, our conclusion is that, said Andrew Valentine being confessedly insolvent, his heirs were not necessary parties. Neither was it necessary that they should appear by guardian *ad litem.*

And as to the sixth error assigned to the action of the court in entering a decree of sale, before the liability of said Andrew Valentine and W. K. S. Stalnaker and the fraudulent conveyance made by them had been inquired

into, we conclude that such inquiry was unnecessary on account of the insolvency of the said parties.

As to the seventh error assigned, to wit, in the court's reserving the consideration of the sale of said forty four acres because of the pendency of said suit of *Heatherly* v. *Poling*, we can not see that the appellants are prejudiced by said action.

The decree complained of is reversed, and the cause remanded.